IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID ARNOLDO CONTRERAS,

       Plaintiff,

v.                                                       CV 13-732 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

      David Contreras applied for disability insurance benefits and supplemental security income on August 26, 2009, based on depression, bipolar disorder, high blood pressure, and hip and back problems. (Administrative Record ("AR") 132, 136.) After his applications were denied at all administrative levels, he brought this proceeding for judicial review. The case is before me now on Contreras's Motion to Reverse or Remand Administrative Agency Action and Memorandum in Support, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Contreras's reply. (Docs. 22-25.) For the reasons explained below, I grant Contreras's motion and remand this case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

      When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or nondisability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the claimant must show (1) that he is not performing a substantial gainful activity; (2) that he has an impairment severe enough to significantly limit his ability to do basic work activities; and (3) that the impairment or impairments, individually or in aggregate, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

If the claimant does not satisfy the third prong, and no finding of disability is otherwise directed, the Commissioner must determine the claimant's residual functional capacity ("RFC"),

or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). An RFC assessment requires two steps: first, determining whether there is an underlying medically determinable physical or mental impairment or impairments that could reasonably be expected to produce the pain or symptoms; and second, evaluating the intensity, persistence, and limiting effects of all medically determinable symptoms to determine the extent to which they limit the claimant's functioning. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). In cases where symptoms, such as pain, are alleged, the RFC determination must be supported by a thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints, resolve any inconsistencies in the evidence as a whole, and set forth a logical explanation of the effects of the symptoms on the individual's ability to work. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).[1] Credibility determinations on a claimant's report of symptoms must contain specific reasons for the finding on credibility and be sufficiently specific to make clear to the individual or subsequent reviewers what weight the ALJ gave to the individual's statements and the reasons for that weight. SSR 96-7p, at *4-5.

At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25; 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv). At the fifth step, the burden shifts to the Commissioner to show that the claimant is capable, based on his vocational factors, of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25.

---

[1] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

**FACTUAL BACKGROUND**

Contreras is a fifty-eight-year-old man with a ninth-grade education. (AR 241.) He worked as a construction laborer from 1994 to 2008 and as a utility cleaner at a casino from 2008 to August 2009. (AR 157-59.) Most recently he was a construction laborer, laying tile, until the company ran out of work in November 2009. (AR 246.) The majority of Contreras's working life included framing, roofing, and general building tasks. (AR 137.) Contreras claims disability beginning on August 3, 2009, based on bipolar disorder and several physical limitations, including bilateral hip pain and degenerative disease of the lumbar discs. As Contreras's motion pertains to his physical conditions, I focus my factual discussion on those matters.

Contreras has an extensive medical record beginning with cardiac catheterization and the permanent implantation of a pacemaker in 2007. (*See* AR 212-31.) The AR contains voluminous records of Contreras's mental health difficulties, with Case Management Notes from the Counseling and Psychotherapy Institute dating from June 2, 2008. (AR 208-478.) He presented at the Socorro Mental Health Clinic on December 14, 2009, seeking help because of intense anxiety, depression, suicidal ideation, and symptoms of post-traumatic stress disorder. (AR 346.)

Medical records first indicate Contreras's complaints of back and hip pain after a session with Natalie Armijo, M.D. on February 22, 2010. (AR 234, 486.) Dr. Armijo noted that Contreras's history of chronic pain—in his back and hips—constituted an exacerbating factor for his mental illness. (AR 488.) In late April 2010, Cathy Simutis, Ph.D., evaluated Contreras. Mental status revealed that Contreras experienced suicidal ideation without a plan of action, depressed affect, and memory changes. (AR 242.) Simutis noted that Contreras had a GAF of 35 and that he participated in limited activities of daily living, which included showering, dressing,

fixing simple meals, grocery shopping, and doing laundry.[2] (*Id.*) Activities of daily living were limited by several factors, including his depressed mood, moderately limited ability to understand and remember instructions, moderately limited ability to concentrate and persist in a task, moderately limited ability to interact with others, and mildly limited ability to adapt to change. (*Id.*) Contreras claimed to stay in bed more often than not. (*Id.*)

Contreras was evaluated by Mathew Caffrey, M.D. on May 5, 2010, at the request of New Mexico Disability Determination Services. (AR 245.) Contreras reported a history of chronic back pain—beginning at age 18—and urinary and fecal incontinence when walking. (*Id.*) He reported the ability to stand for approximately forty-five minutes, walk approximately one block, and sit for several hours. (AR 246.) He was able to do basic household chores and drive a car for approximately an hour. (*Id.*) Dr. Caffrey noted that Contreras walked slowly, but without assistance. (AR 246-47.) Contreras exhibited mild tenderness to palpation along the paraspinals in the lumbar region. (*Id.*) Dr. Caffrey did not note any significant limitations relating to Contreras's hip and back pain, but expressed concern about spinal stenosis with urinary and fecal incontinence. (AR 247.)

On June 24, 2010, Contreras had x-rays of the spinal lumbar and bilateral hip and pelvis, which revealed moderate disc space narrowing and bony degenerative changes involving the vertebral endplates and facet joints of the lumbar spine, as well as bilateral mild to moderate osteoarthritis of the hips and mild degenerative changes to the pubic symphysis. (AR 299, 307.)

---

[2] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between thirty-one and forty is assessed when the patient is believed to have "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, all of Contreras's relevant mental health providers used this scoring method.

On July 1, 2010, Contreras visited Sally Bodensteiner, M.D., at Socorro Community Health Center. (AR 283-85.) Dr. Bodensteiner discussed Contreras's x-rays and noted the medical causes of Contreras's back and hip pain. (AR 284.) Contreras indicated that he experienced trouble sitting for extended periods of time, which also affected his sleep. (*Id.*) That same day, Deborah Bankson, LISW, noted that Contreras received cortisone injections for his hips, but that his pain was so significant he "[was] going to give [it] until the end of the year – then . . . consider the solution of taking his life." (AR 332.)

Contreras returned for hip injections on July 15, 2010, and reported to Dr. Bodensteiner that the injections helped the hip pain but had no effect on his lower back pain. (AR 280.) He received another round of injections on July 27, 2010. (AR 300-02.)

In a progress note dated August 4, 2010, Bankson recorded Contreras's complaints of physical pain. (AR 327.) Contreras stated that the percocet prescribed for his back pain brought no relief, and the physical discomfort exacerbated his already severe psychological symptoms. (*Id.*)

By October 1, 2010, Contreras presented at the Socorro Community Health Center complaining of back pain, nausea, and vomiting. (AR 305.) His symptoms began on September 16 of that year, and he had been unable to keep down food or medication for ten days. (*Id.*) At that time, he received another round of bilateral steroid injections for the pain in his hips stemming from osteoarthritis. (*Id.*) Two weeks later, he complained to Bankson that the pain in his back was "overwhelming," and he did not know how much longer he could handle it. (AR 322.) He presented, again, on November 8, 2010, with extreme back pain. (AR 304.)

Contreras continued his treatment with Dr. Bodensteiner. On June 20, 2011, he reported that hip injections were helpful, but his back pain was ever-worsening. (AR 353.) He described

the pain as "burning, localized, piercing, sharp, shooting and stabbing," which was exacerbated by changing positions, and he was in constant pain. (*Id.*) Dr. Bodensteiner prescribed baclofen, a muscle relaxant, to treat his back pain. (*Id.*) At a follow-up visit on July 20, 2011, Contreras reported that the muscle relaxant helped him sleep, but that he still experienced a "painful ball in his back." (AR 362.)

## HEARING TESTIMONY

The ALJ held a hearing on March 1, 2011, at which Contreras testified. (AR 43-64.) He was represented by a non-attorney advocate at the hearing. (AR 45; AR 76.)

Contreras testified that he worked for a few months in 2009—after his alleged onset date—at Road Runner Tile. (AR 49.) He stopped working when the company ran out of work, but that work was becoming physically difficult due to pain in his back and hips. (AR 51.) He has had back problems for twenty years and sought treatment in January 2010. (*Id.*) Contreras stated that steroid injections produced no ameliorative effects on his back. (AR 52.) In addition to physical difficulties with his back and hips, Contreras testified that he suffers from mental health problems, including nightmares, feeling mentally drained, a lack of mental organization, suicidal ideation, anxiety, and an inability to handle crowds. (AR 53-57.)

Contreras said that he lives alone. (AR 58.) During a regular day, he wakes up and forces himself to get up, tries to straighten the house, watches the morning news, tries to read, and tries to make it to all of his doctors' appointments. (AR 60.) He gets dressed in the morning, is able to drive, sometimes cooks, does the grocery shopping, and performs some basic household chores. (AR 57-58.) Contreras testified that he is easily exhausted by minor tasks. (AR 58.)

Contreras admitted to a period of self-medicating with marijuana, but states that he has not used the substance for some time. (AR 60.) He also admitted to drinking approximately two beers per week. (AR 59-60.)

The ALJ stated that she would be sending interrogatories to a vocational expert ("VE"). (AR 62.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on November 18, 2011. (AR 24-38.) The ALJ first found that Contreras had not engaged in substantial gainful activity since his alleged onset date of August 3, 2009. (AR 26.) At step two, the ALJ found that Contreras's bipolar disorder qualified as a severe impairment. (AR 27.) Contreras's hip and back pain, stemming from generalized osteoarthritis, was considered a non-severe impairment, largely on the basis of a May 7, 2010, consultative examination performed by Dr. Caffrey. (*Id.*) At step three, the ALJ found that Contreras did not have an impairment or combination of impairments that met or medically equaled the severity criteria for presumed disability under Listing 12.04(A3), (B). (AR 29.) The ALJ found that Contreras experienced mild restriction in activities of daily living, and moderate difficulties with regard to social functioning, concentration, and persistence or pace. Contreras experienced no episodes of decompensation for an extended duration. (AR 30.)

As part of step four, the ALJ determined that Contreras has the RFC to perform a full range of work at all exertional levels, but is limited to simple, work-related decisions with few workplace changes and no public interaction. (*Id.*) In making this decision, the ALJ noted that Contreras was receiving unemployment benefits and was noncompliant with prescribed treatment options. (AR 34.) The ALJ noted that Contreras described daily activities that are not

8

limited to the extent one would expect given his subjective complaints and alleged limitations. (*Id.*)

Relying on the opinion of the VE, the ALJ concluded at step four that Contreras could not perform past relevant work as a construction laborer or a utility casino cleaner. (AR 36.) At step five, the ALJ considered Contreras's RFC, age, education, and work experience. Based on the opinion of the VE, the ALJ concluded that there exist, in significant numbers, jobs in the national and regional economy, such as a laundry worker or hand polisher, to which Mr. Contreras could reasonably adjust and find gainful employment. (AR 37.) Therefore, the ALJ concluded that Contreras was not disabled and not eligible for benefits. (*Id.*)

Contreras appealed the decision to the Appeals Council, but the Council found that the additional evidence provided did not render the ALJ's findings or conclusions contrary to the weight of the evidence. (AR 2.) The Council appended medical source evidence and functional statements from Bankson and Glenn Dempsey, M.D., to the record. (AR 5.) Bankson documented marked limitations in Contreras's ability to maintain focus and concentrate, his ability to make simple work-related decisions, and his ability to complete a normal workday or workweek without interruptions from psychological symptoms. (AR 536.) Dr. Dempsey documented marked limitations in Contreras's ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration, work in coordination with or proximity to others, complete a normal workday without interruptions from psychological symptoms, and get along with coworkers or peers.(AR 480-82.) The Council found that the treatment note from the University of New Mexico Hospital, dated February 6, 2013, was not qualifying new evidence because it was later in time than the ALJ's decision. (AR

2.) Denial of review by the Appeals Council rendered the ALJ's decision the final decision of the Commissioner. (*Id.*)

## DISCUSSION

Contreras argues that he has been disabled since August 3, 2009. He makes three broad arguments, which I reorganize in logical fashion. First, Contreras argues that the ALJ erred in her RFC assessment by failing to consider Contreras's osteoarthritis and degenerative disc disease. Second, he contends that new evidence submitted to the Appeals Council undercuts the ALJ's RFC assessment. Finally, he asserts that the Appeals Council failed to conduct a proper analysis of the new evidence submitted for its review. Because I find that the ALJ erred in her RFC assessment by not considering Contreras's medically determinable physical impairments, failing to fully explain her reasons for discounting such evidence, and failing to reconcile inconsistencies in the record as a whole, I do not reach the second and third claims of error.

"[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). An ALJ may not rely on her finding of non-severity instead of conducting a proper RFC analysis. *Id.* (citing SSR 96-8p, 1996 WL 374184, at *4).

Contreras challenges the ALJ's RFC assessment on the grounds that she failed to include the determinable impairments of osteoarthritis and degenerative disc disease. The ALJ determined that these impairments were not severe, at step two (AR 27), but failed to discuss them during her RFC assessment (AR 30-36). In fact, during the ALJ's rather detailed analysis of Contreras's RFC as it relates to his severe impairment—bipolar disorder—she mentioned hip or back pain only two times. (AR 33, 34.) The ALJ further adopted the opinions of State agency

medical consultants, except with regard to their determinations that Contreras had moderate restrictions in activities of daily living. (AR 35.)

Contreras presented at the Socorro Mental Health Clinic on December 14, 2009, complaining of depression. (AR 238.) At that time, he told clinicians that the only time he felt normal was when he was working construction, but that the pain in his hips had become so severe that he could no longer carry his tool belt. (*Id.*) He was then evaluated by Dr. Armijo on February 22, 2010. (AR 234.) Much of the interaction related to his mental health status, but Dr. Armijo noted his complaints of bilateral hip pain. (*Id.*) Dr. Caffrey performed a consultative evaluation for the state agency on May 7, 2010, and noted that Contreras ambulated slowly but normally, and complained of hip and back pain. (AR 246.) Dr. Caffrey stated that, while there existed no objective evidence of a severe limitation related to Contreras's hip and back pain at the time, he was concerned that Contreras exhibited symptoms of spinal stenosis with urinary and fecal incontinence. (AR 247.)

A June 24, 2010, x-ray showed that Contreras has mild to moderate bilateral osteoarthritis of the hips and moderate degenerative disease of the lumbar discs. (AR 298, 307.) Contreras then received regular pain management treatment from Presbyterian Medical Services between 2010 and 2013, with Dr. Bodensteiner, including bilateral steroid injections at his hips. (AR 280-90, 300-06, 585-94.)

Interestingly, the ALJ did not include any of this information in her RFC assessment, instead focusing solely on the severe impairment of bipolar disorder. Under the regulations and Tenth Circuit precedent, the ALJ is required to consider, analyze, and thoroughly discuss the combined effects of all medically determinable impairments when conducting an RFC assessment. The ALJ in this case thoroughly expounded on Contreras's severe impairment of

bipolar disorder, but failed to discuss the medically determinable impairments of bilateral osteoarthritis of the hips and degenerative disease of the lumbar discs. This failure could materially impact the disability determination in this case and constitutes reversible error. Because I find reversible error in the ALJ's RFC assessment, I do not reach Contreras's other claims of error.

## CONCLUSION

For the reasons stated above, the motion to remand is GRANTED, and this matter is remanded to the SSA for a more thorough exposition at the RFC assessment stage of Contreras's medically determinable impairments, to include a full discussion of Contreras's osteoarthritis of the hips and degenerative disease of the lumbar discs.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.